# CHARLESTON

KEENAN *v.* SCOTT *et al.*

Submitted March 10, 1908.    Decided March 24, 1908.

1.  ATTORNEY AND CLIENT—*When Relationship Exists.*

    As soon as a client has expressed a desire to employ an attorney and there has been a corresponding consent on the part of the attorney to act for him in a professional capacity, the relation of attorney and client has been established; and all dealings thereafter between them relating to the subject of the employment will be governed by the rules applicable to such relation.    (p. 143.)

2.  SAME—*Continuance.*

    After such relationship has begun, any subsequent change in their agreement as to compensation, or as to the property out of which such compensation of the attorney is to come, will not affect such existing relationship.    (p. 143.)

3.  SAME—*Conveyance to Attorney—Right to Rescind.*

    Where, after such relationship has been established, the attorney procures from the client a conveyance to himself of part of the property involved in litigation, as compensation for his legal services therein, such conveyance will be deemed presumptively invalid, and voidable, on principles of public policy and for prevention of wrong, at the election of the client, irrespective of the fairness or unfairness of the contract, provided such election is exercised within a reasonable time.    (p. 145.)

4.  SAME—*Accounting by Attorney.*

    If the property so obtained by the attorney is sold by him, he will be held to account as trustee for the proceeds thereof.    (p. 145.)

5.  SAME—*Trust Relationship.*

    While the relationship of attorney and client exists, all purchases of outstanding interests by the attorney will be adjudged in trust for the client.    (p. 145.)

6.  SAME—*Compensation.*

    Section 13, chapter 119, Code, providing that "an attorney shall be entitled for his services as such to such sums as he may contract for with the party for whom the service is rendered," has no application to an agreement, made after the relation of attorney and client has been established, for transfer to the former of part of the property in litigation as compensation for legal services.    (p. 146.)

Appeal from Circuit Court, Randolph County.

Bill by L. H. Keenan against C. H. Scott and others. Decree for defendants, and plaintiff appeals.

*Reversed.    Remanded.*

JARED L. WAMSLEY and FRED O. BLUE, for appellant.

W. B. MAXWELL, S. T. SPEARS, W. MOLLOHAN and H. G. KUMP, for appellees.

MILLER, JUDGE:

From a decree dismissing his bill plaintiff has appealed. The substantial grounds of relief alleged were that, after this Court had in *O'Connor* v. *O'Connor*, 45 W. Va. 354, in effect adjudged him entitled to a decree enforcing his contract with O'Connor of 1893 for the purchase of a tract of 205 acres of land in Randolph county, and the judgment of this Court reversing the final decree in that cause had been certified to the circuit court for further proceedings, he employed the defendants Scott and Cobb, attorneys, to represent him as counsel in the further proceedings in that cause and in certain other litigation pending in said court, substantially upon the terms that if the title to said land should finally be adjudged in him they would pay off and discharge for him the vendor's lien for the purchase money in favor of O'Connor as ascertained, and, out of the proceeds of the sale of the land they were authorized to make with his approval, after first reimbursing themselves for the money so advanced, retain one fourth of the residue as compensation for their legal services and turn over the remaining three-fourths to him; that on September 14, 1899, to enable the said Scott and Cobb to carry out said contract and to secure them for their services and the advancement to discharge said lien, he conveyed said land to them, by deed absolute on its face, yet with the agreement that it was to operate in the nature of a trust for the purposes stated; that afterwards, January 10, 1900, after said cause of *O'Connor* v. *O'Connor* had been referred to a commissioner, Scott and Cobb filed his answer therein; that, by a decree of October 18, 1900, upon said answer, said 205 acres was confirmed in him, on the basis of his contract of 1893, but decreeing in favor of O'Connor the balance of purchase money, $2,188.71; that subsequently, March 9, 1901, in his absence and without notice to him, at a special term thereof, said court, on the *ex parte* petition of Scott and Cobb, modified said former decree by adjudging them entitled to said land by reason of said deed from the plaintiff to them, and appointing W. B. Maxwell commis-

sioner to make them a deed therefor; that, on learning of this decree shortly afterwards, he saw Scott, who assured him same was not taken for the purpose of in any way changing their contract or relation, but for the sole purpose of carrying the same into effect, and of enabling them the better to further defend the title to the land if necessary; that, trusting Scott, his fears were allayed for a time, but that subsequently, without his knowledge or consent and contrary to the contract, Scott by deed of July 22, 1902, and Cobb by deed of October 17, 1902, conveyed said land to the defendant the Junior Coal Company; that, upon being called upon by the plaintiff for a statement and settlement, Scott and Cobb gave him only evasive answers as to the amount received by them for said land, and that from that day to the time of filing the bill they had in no way accounted to him for the proceeds of said sale. The prayer was for a discovery and accounting by the defendants, the enforcement of said contract, and such other general and special relief as the plaintiff might be entitled to. There was exhibited with the bill the deeds, decrees and proceedings referred to.

Besides their demurrer overruled, Scott and Cobb answered. They admit the original rights of the plaintiff to the land as alleged and decreed, but deny that their contract with him as was alleged in the bill, but, on the contrary, say it was expressly agreed between them and him that, for their services in said O'Connor cause and in other litigation pending in which Keenan was interested, they should have absolutely said 205 acres of land, subject to the lien of the purchase money, in case the title to the same should be declared to be in him; that at the time of making said contract with Keenan they "were not his attorneys in any matters of litigation as to which they were at that time retained," but under their contract agreed to act as his counsel thereafter. They allege that among the cases in which they were to represent the plaintiff was an action against the Roaring Creek Coal & Coke Company for damages for timber cut from said land, which they then regarded as of more value than the land itself subject to said lien; and that at the time of their employment, instead of agreeing to take as a contingent fee the land subject to said lien, they requested plaintiff to give them as such fee whatever he might recover in said action, which he

declined to do, and subsequently on September 14, 1899, conveyed to them said tract of land, not in trust but absolutely. They admit the filing of plaintiffs answer, the procuring of the decree in his favor, and the one in their favor as alleged in the bill, but deny they assured plaintiff the decree in their favor was not taken for the purpose of in any way changing their contract and relation, as alleged; and, by way of discovery, they say that the deed from Scott to the Junior Coal Company shows the exact consideration paid him, $18,000, but that the deed from Cobb does not show the consideration, but, as they do not recognize the plaintiff's right to know the same, they decline to disclose it until required by the court. As affecting the plaintiff's title to the land and the value thereof at the time of the employment of Scott and Cobb, they further allege in their answer that the title thereto was originally in one Hilleary as part of a larger boundary; that one link in the plaintiff's chain of title was a deed from one Buckey, attorney in fact for said Hilleary, but whose power of attorney conferred in fact no authority upon him to sell or convey said land; that, some time after the deed from plaintiff to them, they ascertained said Hilleary had died testate, having devised all her estate to Margaret A. and Henry Carroll, and, in order to perfect their title, said Scott purchased the interest of said Carrolls in said land, and, in addition thereto, before the conveyance of the same to the Junior Coal Company, also obtained a tax deed for said land, which they believed vested all title thereto in Scott for himself and Cobb, and without which they could not have sold the same to the coal company at the price they did.

The Junior Coal Company also answered, defending as an innocent purchaser without notice, admitting that the price paid Scott for his interest in said land was as recited in his deed, but refusing, in deference to the wishes of Cobb, to disclose the price paid him unless required by the court.

Upon the issues made on these pleadings, the testimony of Keenan, Scott, Cobb and Maxwell, the only witnesses, is most conflicting on the question as to what was the real understanding at the time of the execution of the deed by the plaintiff to Scott and Cobb September 14, 1899. Scott and Cobb concur in their testimony that this deed was intended as an absolute conveyance; but there are documentary papers and strong cir-

cumstances connected with the transaction tending to support
the plaintiff in his claim.    As we do not think the case turns
upon this conflict of evidence, we will only refer to a few of
these matters.    The first and foremost perhaps is the fact
that Scott and Cobb obtained from the plaintiff the principal
subject of the litigation in which they had been employed.
The suit upon the timber claim, covered by their employ-
ment, has never been brought to trial.    After obtaining the
deed from the plaintiff, the evidence shows that they went to
work most assiduously to perfect the title, buying in out-
standing claims without notice to the plaintiff, giving little
time or attention so far as the record shows to the plaintiff's
other interests.    After procuring the deed from the plaintiff
and the decree of October 18, 1900, in his favor, they filed
their own petition without process or notice thereon, and had
the court adjudge the land to belong to them.    But it is
not necessary, and we are not to be understood as attempting
to reconcile the conflict of evidence, or as determining upon
which side the preponderance is; and we are frank to say that,
if this was a case between persons who had stood in no fidu-
ciary or confidential relation, the decree of the circuit court
would, upon well recognized principles, necessarily be
affirmed.

The view we take of the case makes it turn upon the true
relationship existing between the plaintiff and Scott and Cobb
on September 14, 1899, the date of said deed.    If, as matter
of law, they then stood in the relationship of attorneys and
client, the principles applicable in such cases must control.
The bill does not as plainly as it might allege what the an-
swer of the defendants and the uncontradicted evidence dis-
close—the result of the negotiations preceding the execution
of said deed—although by its averments it implies an agree-
ment consummated preceding the execution of the deed.
Keenan and Scott in their testimony concur in the fact that
prior to the execution of the deed Scott and Cobb proposed,
after they had agreed to represent him, to take in payment
an assignment of the timber claim, to which both Scott and
Cobb say Keenan consented, and that Scott prepared a con-
tract evidencing such agreement.    Scott and Cobb say, how-
ever, that Keenan subsequently refused to execute this assign-
ment; Keenan, that he was ready to execute it, but was pur-

suaded by Scott to execute instead the deed for the land, Scott assigning as a reason that, as the timber claim and the title to the land were so inter-dependent, he did not think it best to separate them. These witnesses also concur in the fact that prior to such employment Scott and Cobb had taken and examined all the papers pertaining to the O'Connor suit, and, if they had not actually given some advice thereon, had determined to accept the employment. It is claimed by Scott and Cobb that they did not regard their agreement for employment consummated until they obtained the deed of September 14, 1899, in modification of the original agreement relating to the timber claim. But their relationship to the plaintiff is not to be determined by the views they may have had then or at the time of giving their evidence, but by the relation in which the law placed them by their agreement with the plaintiff respecting their professional services.

We will inquire, then: When did this professional relation commence? On this subject, it is said by Weeks on Attorneys, section 183: "The result of a desire on the part of the client to employ an attorney in and about his business or litigation, and of a corresponding consent on the part of the attorney to act for the client in a professional capacity, is the retainer of the attorney, either express or implied, by the party, from which time the professional relation is established." "An attorney may be employed without formalties of any kind. The contract may be made by parol, and is often largely implied from the acts of the parties. Neither is the relation dependent upon the payment of fees. It may exist between two parties, though a third person pays for the attorney's services, or though such services were rendered by the attorney gratuitously." 4 Cyc. 927. "The relation of attorney and client commences from the date of employment of the attorney; that is, from the time when the agreement or contract by which the attorney is retained is consummated. The contract of employment, as in other cases, consists of a mere offer or request by the client and an acceptance or assent by the attorney, either or both of which may be implied." 3 Am. & Eng. Enc. 316.

In *Eoff* v. *Irvine*, (Mo.), 32 Am. St. 609, one of the disputed facts was whether the relation of attorney and client existed. The evidence was that the plaintiff and one Stevens,

who had been an attorney, were neighbors. In former years Stevens had represented the plaintiff. The plaintiff gave Stevens an abstract of title to examine, but he, being out of practice, advised plaintiff to employ the defendant's firm, Blair and Irvine. Plaintiff not knowing these attorneys, requested Stevens to take the abstract to them for examination. The evidence of Stevens was that he left the abstract on the table at the office of these attorneys, but did not know whether either of them was present. A short time afterwards the plaintiff received a note from Irvine asking whether he would pay $1,000 for a quitclaim deed, and with a request to call. When he did call Irvine pointed out the defects in the title and advised him to procure a deed from the owner, giving him the price asked for such deed but not informing him from whom they expected to get it. The plaintiff paid the attorneys nothing for their services, and they made no demand upon him for compensation. The court said: "The evidence of Mr. Stevens, in its general tenor, leaves it in doubt as to whether he employed Blair and Irvine to examine the abstract; but he produces this doubt by the erroneous assumption on his part that it required a payment of money by plaintiff to the attorneys to create the relation of attorney and client." But the court observes: "The proof is clear that plaintiff directed Stevens to employ these attorneys, that Stevens left the abstract at their office, and that Irvine thereafter sent the plaintiff the note before mentioned, and advised the plaintiff to get a quitclaim deed from the owner. Irvine proposed to get 'it for him. This evidence as a whole shows beyond doubt that Stevens did employ these attorneys, and that they examined the abstract pursuant to that employment. The relation of attorney and client did therefore exist between Blair and Leigh H. Irvine on the one hand and the plaintiff on the other."

These authorities, and many others which might be cited, are conclusive of the proposition that, as soon as the client has expressed a desire to employ an attorney, and there has been a corresponding consent on the part of the attorney to act for him in a professional capacity, the relation of attorney and client has been established, and that all dealings thereafter between them relating to the subject of the employment will be governed by the rule applicable to such relation. It

does not require payment of a fee, or an agreement for a fee, to establish such relationship; the law implies a promise of reasonable compensation. 4 Cyc. 927; *Eoff* v. *Irvine, supra.* We need look only to the testimony of Scott and Cobb themselves to find that the plaintiff solicited them, and that they accepted the employment upon the terms proposed, prior to the execution of the deed. That a change was subsequently made as to the property out of which their compensation was to come, did not affect the relationship thus already established. In *Legatt* v. *Sallee,* (Ala.) 3 Port. 115, it is held that "an agreement made by a client with his counsel, after the latter has been employed in a particular business, by which the original contract is varied and the greater compensation is secured to the counsel than may have been agreed upon when first retained, is invalid, and cannot be enforced."

This relationship having been established between plaintiff and Scott and Cobb prior to the date of the deed in question, we have but to apply the rule applicable to the case at bar. It is to be noted that there is a decided difference recognized in the authorities between a direct purchase by attorney from client of the subject of litigation for a consideration independent of the employment, and acquiring title thereto as compensation for legal services rendered or to be rendered respecting the same. The books hold that an attorney is not precluded from dealing with his client by virtue of his relationship, when they are each in a situation to deal at arm's length, although all such contracts will be subject to the closest scrutiny, and the attorney will not be allowed to take advantage of his relations with his client in reference to the property in litigation to the latter's disadvantage; and in case of a purchase of the property he must be able to prove he paid the full amount that could have been obtained from any other person. *Miles* v. *Ervin,* 16 Am. Dec. 623; *Darlington's Estate* (*Pa.*) 30 Am. St. 776; *Leisenring* v. *Black,* 30 Am. Dec. 322; *Lewis* v. *J. A.,* 4 Chy. (N. Y.) 622; *Elmore* v. *Johnson* (*Ill.*), 21 L. R. A. 366, 371. Cases of this character usually turn upon the question whether the client has sustained loss. *Miles* v. *Ervin, supra*; *Elmore* v. *Johnson, supra; Kisling* v. *Shaw* (*Cal.*), 91 Am. Dec. 644, 646. But where the transaction concerns a conveyance or transfer by client to attorney of part of the property involved in litiga-

tion, as compensation for legal services therein, the books hold such a transaction presumptively invalid, and voidable, on principles of public policy and for prevention of wrong, at the election of the client, irrespective of the fairness or unfairness of the contract, provided such election is exercised within a reasonable time. *Lane* v. *Black*, 21 W. Va. 617; *Lewis* v. *Broun*, 36 W. Va. 1; *Thomas* v. *Turner*, 87 Va. 1; *Elmore* v. *Johnson, supra.*

But it is argued by Scott and Cobb that the original title of the plaintiff was only an equitable one, and that, to perfect it, outstanding claims not involved in the litigation to which the employment of counsel related were required and secured by them. We know of no principle, applicable to such a case, taking it out of the general rule; for, after the relationship of attorney and client has been once established, all such purchases of outstanding interests by the attorney will be adjudged in trust for the client. *Baker* v. *Humphrey*, 101 U. S. 494; *Eoff* v. *Irvine, supra;* Weeks on Attorneys, section 277; *Henry* v. *Raiman*, 64 Am. Dec. 703; *Newcomb* v. *Brooks*, 16 W. Va. 32.

It is suggested also in argument that the plaintiff and Scott and Cobb were each attorneys, and that they stood on more equal terms in the transaction in question than is usual between client and attorney. We do not perceive how this fact will relieve the defendants from the liabilities and obligations pertaining to their relationship. Such liabilities and obligations rest on the trust and confidence reposed by the one in the other; and we do perceive that, as between lawyers of the same bar, this trust and confidence might be even more complete than between layman and attorney. Indeed, it is claimed by the plaintiff in this case that, because the defendants were his brethren at the bar, he reposed complete confidence in them.

But the authorities cited say the client must make his election within a reasonable time. Has the plaintiff done so? He says that, after the sale to the Junior Coal Company, he called for a statement and settlement by Scott and Cobb, who gave him an evasive answer. The conveyances to the coal company were made in July and October, 1902, without notice to him; and it does not clearly appear just when he learned of these conveyances, but he soon thereafter, March 11, 1903,

brought this suit.   What is a reasonable time is to be determined by the facts and circumstances of each particular case. *Elmore* v. *Johnson, supra.*   Considering the relationship of Scott and Cobb to the plaintiff and all the facts in this case, we do not think there was any unreasonable delay by the plaintiff in asserting his rights.   In *Elmore* v. *Johnson, supra,* relief was denied after seven years; but the court there says: "Where bills are filed to set aside contracts or deeds between parties standing in a confidential relation to each other, the defense of *laches* is not usually regarded with favor.   It has been said that 'length of time weighs less in such a case than in any other,' and that it is 'extremely difficult for a confidential agent to set up an available defense grounded on the *laches* of his employer.' "

Another argument for the defendants is based upon our statute, section 13, chapter 119, Code, providing that "an attorney shall be entitled for his services as such to such sums as he may contract for with the party for whom the service is rendered."   The same argument was made in *Thomas* v. *Turner, supra:* but it was there held that a similar provision of the statute of Virginia did not apply to an agreement made after the relation of client and attorney was establshed, to transfer to the latter part of the property in litigation as compensation for legal services.

Our conclusion is that, if, as Scott and Cobb claim, the deed to them was absolute, and not upon trust as claimed by the plaintiff, it having been procured by them after the relationship of attorneys and client had been established, the plaintiff had the right, by election within a reasonable time, which he has in effect made by institution of suit, to avoid it as such; and, although this is not the specific prayer of his bill, nevertheless the scope and matter of the bill, and its prayer for an accounting and for general relief, on the principles announced in the numerous cases cited in 5 Enc. Dig. 133, give the court jurisdiction to grant the substantial relief he seeks of an accounting for the purchase money by Scott and Cobb.   In such accounting, they will be charged with the purchase money received, with interest from the date they received it, and credited with the money and interest thereon paid to the estate of Patrick O'Connor to discharge said vendor's lien, with all legitimate and proper disbursements by them in

perfecting the title to the land, and with reasonable compensation for their professional services rendered—the balance, for which a decree will be pronounced against them in his favor, to be paid over to the plaintiff.

We therefore reverse and set aside the decree of the circuit court, and remand the cause, to be further proceeded with in accordance with the principles announced and directions given herein.

*Reversed.  Remanded.*