## NEIHART (NEIHART, Intervener) v. BUEK.
### No. 423.

Circuit Court of Appeals, Tenth Circuit.

May 27, 1931.

J. D. M. Hamilton, of Topeka, Kan. (Ralph T. O'Neil and Barton E. Griffith, both of Topeka, Kan., on the brief), for appellants.

Howard A. Jones and J. E. Addington, both of Topeka, Kan. (J. T. Pringle, of Burlingame, Kan., on the brief), for appellee.

Before LEWIS and COTTERAL, Circuit Judges.

LEWIS, Circuit Judge.

This is a controversy between client and attorney. The question is, which has the right to redeem from a sale of land under a mortgage foreclosure decree, each claiming to be owner of the equity. The court decided in favor of the client, and the attorney has appealed.

These are the material facts: J. H. Mills, the client, had for many years owned, occupied and cultivated a valuable farm of 325 acres in Osage County, Kansas. He was industrious and frugal, but when he reached the age of about seventy-five years he entered into speculative ventures which left him heavily in debt. He departed from former methods of economy and industry and made improvident deals. He provided himself with $5,000.00 at one time and left home to bet on horse races and doubtless would have done so had his family not discovered his whereabouts and intentions. His losses in the respects indicated rendered him well nigh, if not entirely insolvent. He then on February 4, 1918, gave the mortgage in suit on his farm to secure the payment of his $15,000.00 note, which with interest amounted to $20,101.07 at the time of foreclosure decree and order of sale on August 13, 1927. On October 3, 1919, he gave a second mortgage on his farm to the Pioneer State Bank of Burlingame, Kansas, to secure payment of his note of $12,000.00 to that bank. Thereafter, on April 21, 1921, he gave a third mortgage on the farm to the Lebo State Bank of Lebo, Kansas, to secure the payment of his indebtedness of $8,018.00 to that bank. The indebtedness secured by these three mortgages approximated the value of the farm in December, 1924, and the receiver for the Pioneer State Bank had begun foreclosure proceedings on its $12,000.00 mortgage, which with unpaid interest made that debt about $15,000.00.

Neihart appeared for Mills in that suit. He resided at Lyndon, Osage County. His first employment by Mills as attorney was in 1913. Thereafter he frequently gave Mills advice, drew legal documents for him and represented him in litigation. In September, 1924, they discussed the matter of Neihart's

fee. Clearly, Mills' involved condition made Neihart anxious on this subject. He offered fifty cents for every dollar Neihart would save him, but they did not agree. Neihart testified:

"In the latter part November or December, 1924, I talked to him about fee again. Said, 'Mr. Mills, we have always been good friends, but if I spend my time fighting this I owe it to my family to arrange for money consideration and unless you can arrange for money consideration I will have to quit the case or I might in some way arrange to take over the farm.' Told him I had done good deal of work for him in past and hadn't received anything. He never paid me the $50.-00 I paid to Harvey in settlement of his fee. I loaned Mills $10 which he has never repaid. * * * Told him under certain condition I would take farm and get out of it what I could. I said, 'if I am successful in clearing the land up you will be free of all debts against it.' * * * There was then about $42,000.00 against land.

"Well, I told him that I would take the land and fight the case to the best of my ability, and if I was successful in fighting those cases out, that he wouldn't have any deficiency judgment against him for anything on the home place that I got a deed to. * * *

"Well, at that particular time, or at that particular conversation, we didn't agree to anything. We didn't agree to anything that day.

"Three to five days later he came back and said he was going to let me have the farm on those conditions.

"He would give me a deed to the home place, and I told him I would fight these claims to the best of my ability. That was to be my fee.

"In first conversation with Mills when I made my offer, I told Mr. Mills that if he turned this place to me, that would settle all past fees. He asked me that, and I told him it would."

Shortly thereafter, Mills gave Neihart a quit-claim deed to the farm. Neihart took possession, collected rents from the tenants, one of whom was a son of Mills, and put other tenants on the place who attorned to him during the litigation. The deed from Mills to Neihart is the basis of the latter's claim of a right to redeem.

After the foreclosure decree was entered in the suit on the $15,000.00 mortgage, Mills was adjudged to be insane by the Probate Court of Osage County on September 26, 1928. Buck was appointed his guardian, and he filed, on behalf of Mills in the foreclosure suit on the $15,000.00 mortgage, a petition asking the court to adjudge that the right of redemption was in Mills. In that petition he set up that the transaction between Mills and Neihart, under which Neihart procured the quit-claim deed from Mills, was not a valid and binding agreement between them because of the relation of client and attorney, and also that Mills was of weak and unsound mind at the time the transaction was entered into to the knowledge of Neihart. Neihart initiated the lunacy proceedings against Mills. However, he testified in the present proceedings that he first got the impression that Mills had lost his mind in July, 1928, and he "then started things to take care of him, that he told Mills' son his father had lapsed his memory, and imagined things, and ought to be taken care of," that the Probate Court appointed him to represent Mills at the lunacy hearing, and that Mills was intermittently insane, but was of sound mind until July, 1928. Mills' neighbors did not agree as to the inception of his insanity. Some testified that it was prior to the giving of the quit-claim deed to Neihart and some that it was after that date. Neihart had been intimately acquainted with Mills and his family for many years.

Neihart had filed answer for Mills on November 21, 1924, in the suit of the receiver of the Pioneer State Bank to foreclose the mortgage given to said bank on October 3, 1919. He thereafter filed additional answer in that case on March 22, 1926, as attorney for Mills, and therein alleged:

"This defendant alleges that the note and mortgage set out in plaintiff's petition was made, executed and delivered to said plaintiff under duress. That this defendant at the time of delivery thereof, was not of sound mind and wholly unfit mentally to attend to his business, which said Pioneer State Bank by its officers, well knew, and that said Pioneer State Bank by its officers threatened this defendant that if this said defendant did not make, execute, and deliver to said Pioneer State Bank the said note and mortgage set out in plaintiff's petition, that said Pioneer State Bank by its officers would have said defendant declared of unsound mind and have a guardian appointed over him. That said defendant in fear of the threat so made and believing that the said plaintiff would carry out his threat, made, executed, and delivered to said plaintiff the above mentioned note and mortgage."

Neihart gave as his reason for making this allegation of Mills' unsound mind and mental incompetency to transact business, when he gave the note and mortgage to the Pioneer State Bank in 1919, that he put that allegation in the answer at the suggestion of a son of Mills.

The Pioneer State Bank suit was in the state district court of Osage County. The suit to foreclose the $15,000.00 mortgage, in which decree was entered in August, 1927, was brought in the federal court, and Neihart testified that he filed answer to that suit for Mills in which he alleged that he was of unsound mind, and asked that a guardian be appointed for him, and that he personally verified that answer, but that in doing so he merely followed the thought given to him by a son of Mills.

Mills was past eighty-two years of age when he gave the quit-claim deed to Neihart. Neihart settled the liability of Mills to the Pioneer State Bank for $5,000.00. He also settled with the Lebo State Bank its claim of more than $11,000.00 on the note and mortgage for $5,600.00.

Neihart in making settlement with the Lebo State Bank gave that bank, on May 20, 1925, a note for $2,240.00, secured by a chattel mortgage on 250 acres of corn on the Mills farm, signed by himself, by Mills, and by Mills' son, the tenant; and there is no doubt that large sums received by Neihart from the sale of crops pending the litigation were applied by him in payment of the settlements he made with the two banks.

The learned district judge expressed the opinion that since the year 1913 by numerous acts and conduct Mills had demonstrated such weakness of intellect as to put anyone dealing with him upon inquiry as to his weakened and enfeebled mental state and lack of business ability or mental power to conserve his property. He was also of the opinion that the relation between the parties, being one of especial confidence, trust and influence, prohibited Neihart from taking to himself under his claimed agreement with Mills all benefit and advantage that might be obtained out of the property in litigation.

Perry on Trusts (5th Ed.) vol. 1, § 202, states the rule thus:

"The relation of attorney and client is one of especial confidence and influence, and while that relation continues the attorney cannot receive gifts or make purchases from the client. It has been said in some cases that the attorney is absolutely prohibited from entering into contracts with his clients. If the rule is not quite so peremptory as this, it at least goes to the extent of prohibiting him from contracting with his client for an interest in the subject-matter of the litigation."

Some of the courts do not fully sustain some of the restrictions in the above excerpt, but the last one there noted is, we think, generally supported. Yeamans v. James, 27 Kan. 195, 206, 207; Cunningham v. Jones, 37 Kan. 477, 15 P. 572, 1 Am. St. Rep. 257; Keenan v. Scott, 64 W. Va. 137, 61 S. E. 806; Thomas v. Turner's Adm'r, 87 Va. 1, 12 S. E. 149, 668; Rogers v. Marshall (C. C.) 13 F. 59. See, also, Ridge v. Healy (C. C. A.) 251 F. 798, 805; Condit v. Blackwell, 22 N. J. Eq. 481; 6 Corpus Juris, 686; 3 Am. & Eng. Ency. of Law (2d Ed.) 337, and cases cited.

Obviously Neihart rendered valuable services; but when he induced the two banks to reduce their claims to the amounts stated there was a valuable equity in the farm, and no reason appears why Neihart could not have accomplished those results without taking the deed from Mills. Mills' advanced age and weakened mental condition when he dealt with Neihart are not without weight. Some of his sons knew of the transaction with Neihart, but testified that they thought what was being done was only a method to protect the interests of their father, and did not know until late in the litigation that Neihart claimed to own the farm; that their first knowledge of that claim was when they or Buek spoke of redeeming from the mortgage sale, and Neihart informed them they were too late.

The order appealed from is affirmed.