No. 13-0544 – *Lawyer Disciplinary Board v. Hussell*

**FILED**

November 25, 2014

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

Justice Ketchum, dissenting:

The Hearing Panel recommended Mr. Hussell be suspended for 90 days. Mr. Hussell agreed with the suspension, saying in his brief that he "requests that the recommended sanctions be imposed." At oral argument, Mr. Hussell's lawyer insisted that we should adopt the Hearing Panel's recommended 90-day suspension. A lawyer would not agree with a suspension if he/she hadn't breached the Rules of Professional Conduct. I would therefore have suspended Mr. Hussell for 90 days.

There will be many lawyers who will grouse that the majority opinion took it easy on Mr. Hussell. Nothing is farther from the truth. There is <u>absolutely no evidence</u> that Mr. Hussell did any legal work or represented James and Carolyn L. during the time he had an extra-marital affair with Carolyn L. The extra-marital affair started after Hussell was fired as the estate lawyer for James and Carolyn L.

Hussell and the L. family became acquainted around 2008 after Hussell and his family purchased property and built a cabin in Greenbrier County near property owned by James and Carolyn L. Soon thereafter, Hussell and his wife and children became social acquaintances of James and Carolyn L. and their family. On September 12, 2009, Hussell was hired by multiple members of the L. family to assist them with estate-planning services.

On November 3, 2009, Hussell met in his office in Charleston with James and Carolyn L. (James L. participated by phone) to have them fill out a standard questionnaire for estate-planning clients. The meeting quickly ended, however, when James and Carolyn L. were

1

unable to complete the questionnaire due to their disagreement over the guardianship of their children in their wills. After that meeting, James and Carolyn L. never completed the estate-planning questionnaire nor provided the requested information. As a result, Hussell received no information during his representation regarding their assets or financial situation.

Consequently, Hussell did not perform any estate-planning work for James or Carolyn L. after the November 2009 meeting, nor did he ever have any communications with either of them regarding their estate planning after November 2009.

Around January 1, 2010, Carolyn L. telephoned Hussell and told him that she and James L. were separating. In addition, James L. asked if Hussell would keep his financial information separate from his wife's, Carolyn L. On January 6, 2010, Hussell mailed a letter to both James and Carolyn L. stating that he could represent both of them (a big mistake) if they gave their consent and that he would keep each spouse's financial information separate and confidential. James and Carolyn L. were to sign the letter and return it to Hussell.

Within a week, James L. indicated to Hussell that he wanted to speak with him privately. The meeting took place at the Greenbrier on January 10, 2010. At the meeting, James L. terminated Hussell's legal representation of himself and his wife, Carolyn L. James L. testified that he was uncomfortable with Hussell continuing the estate planning for him and his wife. He had already obtained a reference for another estate-planning lawyer in Roanoke, Virginia.

The termination on January 10, 2010, was not disputed. In fact, it was confirmed by Carolyn L. and by James L.'s sister. Carolyn L. recalled that her husband had a conversation with Hussell in January 2010, during which James L. told Hussell "that he wasn't comfortable with [Hussell] representing him because of the fact that [Hussell] and I were such good friends."

2

In addition, James L.'s sister testified that she was present when James L. and Hussell stepped aside to speak privately in January 2010. She further testified that James L. told her that he had informed Hussell that he "just didn't really want to continue to have Hussell work with him." She indicated that Hussell was terminated.

Put simply, it is undisputed that Hussell was fired at the January 10, 2010, Greenbrier meeting. However, Hussell made another big mistake in not confirming his termination in a letter to James and Carolyn L.

The most important undisputed fact is that Hussell never performed any legal work for James or Carolyn L. after the Greenbrier meeting on January 10, 2010.

On January 22, 2010, twelve days after the Greenbrier termination, Hussell received back the letter he had sent to James and Carolyn L. which they signed and dated January 14, 2010. Both James and Carolyn L. signed the letter relating to separate representation and confidentiality. Having been previously fired, Hussell took no action and put the letter in the James L. billing file which is a file for "administrative things that are not substantive."

Hussell did not act on the letter because he had been fired. James and Carolyn L. never spoke again with Hussell about legal representation. Hussell never performed any legal work for James and Carolyn L. after he had been fired at the Greenbrier.

People can speculate all they want, but the majority opinion isn't off the mark. The undisputed evidence in the record is that the extra-marital affair between Hussell and Carolyn L. did not start until approximately three months after Hussell was fired at the Greenbrier on January 10, 2010. The only evidence presented was that the affair started three months later, in March 2010. No witness even surmised that the affair started before March 2010.

The ethical violations found by the Hearing Panel were that Hussell had a sexual relationship with his client, Carolyn L., and that he gave her divorce advice while he represented her and James L. However, all this occurred after he was fired on January 10, 2010, and after the extra-marital affair started in March 2010. Hussell had not acted as the lawyer for James and Carolyn L. for three months when the extra-marital affair began.

The Hearing Panel found that Hussell's representation was not terminated because he had received the letter from James and Carolyn L. which was signed by them four days after he was fired. The Hearing Panel found, because of the letter, Hussell was still the lawyer for both James and Carolyn L. when the affair began three months later. They also found he did not send a disengagement letter.

I respectfully disagree with the Hearing Panel. There is no ethical rule or case law that requires a lawyer to send a client a disengagement letter when he/she is fired. Hussell did nothing to indicate he represented James and Carolyn L. after he was fired at the Greenbrier. Hussell did nothing by way of legal work for James and Carolyn L. after the Greenbrier termination. He did nothing.

In order for the letter signed by James and Carolyn L. to be considered a re-engagement of Hussell as a lawyer, there must have been an acceptance by Hussell to act for James and Carolyn L. in a professional legal capacity. Our Court has held,

> As soon as the client has expressed a desire to employ an attorney, and there has been a corresponding consent on the part of the attorney to act for him in a professional capacity, the relation of attorney and client has been established; and all dealing thereafter between them relating to the subject of the employment will be governed by the rules applicable to such relation.

Syllabus Point 1, *Keenan v. Scott*, 64 W.Va. 137, 61 S.E. 806 (1908) (emphasis added).

4

Mr. Hussell did not consent to a re-engagement to act as the lawyer for James and Carolyn L. He made a big mistake in not replying in writing to the letter. However, this does not amount to any ethical violation under the Rules of Professional Conduct.

Still, even with all this in mind, by forcefully advocating we adopt the Hearing Panel's recommended 90-day suspension, Mr. Hussell has conceded that he committed ethical violations. While I can't find them in the record, Mr. Hussell's concessions say that the Hearing Panel got it right. The majority therefore should have adopted their recommendation.