# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Cynthia McCoy, Anna Eschelmeyer, and William Fowler,**
**Plaintiffs Below, Petitioners**

**vs.) No. 19-0018** (Hancock County 12-C-185)

**Steven Dragisich,**
**Defendant Below, Respondent**

**FILED**
**October 16, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Cynthia McCoy, Anna Eschelmeyer, and William Fowler (hereinafter collectively referred to as "Petitioners"), by counsel Frank X. Duff and Sandra K. Law, appeal the Circuit Court of Hancock County's December 28, 2015 order granting summary judgment in favor of Respondent, Steven Dragisich ("Attorney Dragisich"). Attorney Dragisich, by counsel Ancil G. Ramey, Hannah C. Ramey, Ben M. McFarland, and Robert P. Fitzsimmons, filed a response in support of the circuit court's order. Petitioners filed a reply.

This Court has considered the parties' briefs, their oral arguments, and the record on appeal. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Hilda Bain ("Mrs. Bain"), mother of Petitioners, passed away on January 19, 2010, after battling a series of complications stemming from a pneumonia diagnosis. Mrs. Bain had a significant history of health problems, including carotid stenosis, cerebrovascular disease, mini-strokes, hypertension, hyperlipidemia, and other cardiopulmonary complications. Following her pneumonia diagnosis in October of 2009, Mrs. Bain spent seventy days in four separate hospitals in the northern panhandle's tri-state area: Wheeling Hospital in West Virginia; Acuity Specialty Hospital and Trinity Medical Center in Ohio; and West Penn Hospital in Pennsylvania.

After Mrs. Bain's death, her husband and the Petitioners' stepfather, Richard Bain ("Mr. Bain"), qualified as executor of her estate. On March 26, 2010, Cynthia McCoy ("Petitioner McCoy") met with attorney Marcy Grishkevich ("Attorney Grishkevich") of Grishkevich & Curtis, PLLC, to discuss the possibility of filing medical malpractice and wrongful death claims against two hospitals that treated Mrs. Bain during the course of her pneumonia. Petitioner McCoy was concerned that her stepfather, Mr. Bain, would be reluctant to file a lawsuit because his son was a respiratory therapist at one of the hospitals where Mrs. Bain had been treated. As such, Attorney Grishkevich suggested the possibility of removing Mr. Bain as the executor. On this

1

same day, Petitioner McCoy signed a retention agreement with Grishkevich & Curtis, PLLC to provide "legal services concerning a wrongful death action/malpractice issue and removal of personal representative." This agreement was signed by Petitioner McCoy and Attorney Grishkevich.

On April 29, 2010, Attorney Grishkevich sent written correspondence to Mr. Bain regarding a potential conflict of interest he had in serving as the executor of Mrs. Bain's estate, which stemmed from an allegation that Mr. Bain's son was an employee of Acuity Specialty Hospital while Mrs. Bain was a patient there. This correspondence requested that Mr. Bain voluntarily resign as executor of the estate. As a result of Attorney Grishkevich's inquiry, Mr. Bain decided to obtain legal counsel of his own. He contacted the firm of Frankovitch, Anetakis, Colantonio & Simon to represent him in his capacity as executor of Mrs. Bain's estate.

On May 5, 2010, Eric Frankovitch of Frankovitch, Anetakis, Colantonio & Simon sent correspondence to Attorney Grishkevich on behalf of Mr. Bain. In the letter, Mr. Frankovitch notified her that his firm would be investigating the merits of filing a medical malpractice or wrongful death action on behalf of Mrs. Bain's estate. Then, on December 3, 2010, following a review of the medical records and consultation with a medical expert, Mr. Frankovitch and his firm ultimately declined to represent the estate in a medical malpractice or wrongful death claim, but informed Mr. Bain that Attorney Grishkevich "may still be interested in pursuing this claim." Mr. Frankovitch also noted that "[a]s the executor of the Estate, [he has] the authority to bring a claim on behalf of Hilda" and he therefore "may want to talk with Mrs. Grishkevich about pursuing a claim."

Thereafter, on January 3, 2011, Petitioner McCoy executed a new retainer agreement with Grishkevich & Curtis, PLLC, which was signed by Attorney Grishkevich and Respondent Attorney Dragisich, who started working for the firm in August of 2010. This retainer agreement on its face was for "legal services . . . concerning an incident regarding the estate of Hilda I. Bain." The substantive differences between the March 26, 2010 retention agreement and the January 3, 2011 retention agreement were as follows: increasing the contingency fee from 30% to 40%; changing the scope of representation from "legal services concerning a wrongful death action/malpractice issue and removal of personal representative," to "legal services . . . concerning an incident regarding the estate of Hilda I. Bain;" and adding Attorney Dragisich as an "attorney."

After this meeting, Attorney Grishkevich drafted a petition to remove Mr. Bain as executor of the estate; however, it was never filed. Rather, Mr. Bain contacted Attorney Grishkevich and indicated that he wished to be represented by her for the purpose of potentially filing a medical malpractice/wrongful death claim. Likewise, on January 17, 2011, Mr. Bain executed a separate retainer agreement with Grishkevich & Curtis, PLLC, for "legal services . . . concerning an incident regarding the estate of Hilda I. Bain." This agreement also was signed by both Attorney Grishkevich and Attorney Dragisich.

Attorney Dragisich parted ways with Grishkevich & Curtis, PLLC, three months after he signed the January 3, 2011 retention agreement with Petitioner McCoy. This separation was memorialized on April 15, 2011, when Attorney Grishkevich and Attorney Michael Curtis, as members/owners of Grishkevich & Curtis, PLLC, and Attorney Dragisich, as the member/owner

of the newly formed Dragisich Law Office, PLLC, entered into an agreement outlining which files Attorney Dragisich would transfer to his new law office. In that agreement, it stated that all "cases and clients not specifically mentioned above shall be the sole property and responsibility of Grishkevich & Curtis and Grishkevich & Curtis, PLLC." Listed in the agreement were approximately forty-three cases that Attorney Dragisich would take with him to his new firm. The claims encompassed by the retention agreements in the case sub judice—regarding the estate of Mrs. Bain—are not specifically listed in the April 15, 2011 agreement.

Then, in August of 2011, the law firm of Grishkevich & Curtis, PLLC, dissolved. On August 30, 2011, Attorney Grishkevich sent Plaintiff McCoy a letter, on her personal letterhead, that informed Plaintiff McCoy of the firm's dissolution. In the letter, Attorney Grishkevich emphasized that she and her paralegal were still handling the potential claim of Mrs. Bain's estate on behalf of the Petitioners. Attorney Grishkevich never brought any action on behalf of the estate.

On January 10, 2012, Attorney Grishkevich sent a letter to Mr. Bain informing him of the upcoming two-year anniversary of Mrs. Bain's death—which date also signified the expiration of the statute of limitations. In the letter, she asked Mr. Bain to contact her to discuss proceeding with the medical malpractice/wrongful death action. Petitioner McCoy was copied on the correspondence. Attorney Grishkevich never received a response.

Then, on January 21, 2012, Attorney Grishkevich sent another letter to Mr. Bain asking him again if he was still interested in pursuing his claims against the hospitals. Once again, Petitioner McCoy was copied on the correspondence. Attorney Grishkevich never received a response. Thus, on March 24, 2012, she sent a final letter to Mr. Bain informing him that she was closing the file due to his non-responsiveness and the expiration of the statute of limitations.

In October of 2012, Petitioners filed a legal malpractice claim against Attorney Grishkevich, Grishkevich & Curtis, PLLC, and Attorney Dragisich. In the Complaint, the attorneys and law firm were alleged to have committed legal malpractice by not bringing a wrongful death action within the statute of limitations. Eventually, the claims against Attorney Grishkevich, other lawyers, and the firm were settled.[1] The Circuit Court granted summary judgment in favor of Attorney Dragisich finding that (1) there was no attorney-client relationship between Petitioners and Attorney Dragisich; and (2) Attorney Dragisich did not owe any legal duty of care to the Petitioners. This appeal followed.

Petitioners ask this Court to review the order of the Circuit Court of Hancock County which granted summary judgment in favor of Attorney Dragisich. Our standard of review of the circuit court's order is well settled. On appeal, this Court accords a plenary review to a circuit court's order granting summary judgment: "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994).

In conducting our *de novo* review, we apply the same standard for granting summary judgment that is applied by the circuit court. Under that standard, "[a] motion for summary

---

[1] An Amended Complaint added Michael T. Curtis—in his capacity as partner/owner of Grishkevich & Curtis Law Office, PLLC—as a defendant. He is not part of the current appeal.

judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Surety Co. v. Fed. Ins. Co. of New York,* 148 W. Va. 160, 133 S.E.2d 770 (1963). With this standard in mind, we now address the arguments presented.

On appeal, Petitioners argue that the circuit court erred in granting Attorney Dragisich's motion for summary judgment and in finding (1) that there was no attorney-client relationship formed between Attorney Dragisich and the Petitioners; and (2) that Attorney Dragisich owed no legal duty of care to the Petitioners. Rather, Petitioners contend that an attorney-client relationship was formed when Attorney Dragisich signed the retention letter on January 3, 2011, and that he breached legal duties when he failed to bring a claim within the statute of limitations.

To support their argument that an attorney-client relationship was formed, Petitioners cite to this Court's opinion in *Keenan v. Scott*, 64 W. Va. 137, 61 S.E. 806 (1908). In Syllabus point 1 of *Keenan*, this Court held that

> [a]s soon as the client has expressed a desire to employ an attorney, and there has been a corresponding consent on the part of the attorney to act for him in a professional capacity, the relation of attorney and client has been established; and all dealings thereafter between them relating to the subject of the employment will be governed by the rules applicable to such relation.

*Accord W. Auto Supply Co. v. Dillard,* 153 W.Va. 678, 685, 172 S.E.2d 388, 393 (1970); *State ex rel. Magun v. Sharp,* 143 W.Va. 594, 596, 103 S.E.2d 792, 794 (1958). Thus, according to Petitioners, there is no doubt that both Petitioners and Attorney Dragisich intended to engage in an attorney-client relationship. Petitioner McCoy testified that one of the reasons she came in to sign the new January 3, 2011 retention agreement was because Attorney Dragisich was being brought into the case to represent Petitioners. Petitioners allege that this is proof of their intention to hire Attorney Dragisich as their counsel. Similarly, they contend that Attorney Dragisich signing the agreement is an indication that he intended to act as counsel for Petitioners.

Attorney Dragisich rebuts Petitioners' argument in its entirety and asks this Court to affirm the circuit court's order. Contrary to Petitioners' position, Attorney Dragisich argues that the circuit court carefully examined the circumstances of the case and correctly found that no attorney-client relationship existed. As stated in the circuit court's order:

> The court has examined the undisputed relevant facts in this case with the written contract signed by [Attorney Dragisich]. This was necessary because West Virginia law is clear that the [sic] contract law determine [sic] whether an attorney-client relationship has been established and such contract may be evidenced either by agreement or by implication. *See State ex rel DeFrances v. Bedell,* 191 W. Va. 513, 517, 446 S.E.2d 906, 910 (1994).
>
> However, West Virginia law also recognizes that "[t]he determination of the existence of an attorney-client relationship

4

depends upon each case's specific facts and circumstances." *State ex rel. DeFrances*, 191 W. Va. at 517, 446 S.E.2d at 910.

Accordingly, the circuit court ruled that the two factors stated in *Keenan* had not been satisfied because:

> [Petitioners] never knew [Attorney Dragisich] and never expressed a desire to employ him. They did want to hire Ms. Grishkevich and that is who they hired. The first element of *Keenan* is not satisfied.

> Although [Attorney Dragisich] did sign the Retainer Agreement, he signed it in his capacity as an associate who was expected to do what his employer asked. There is no evidence in this case that he ever consented to act for [Petitioners] in a professional capacity in a wrongful death action accusing medical professionals of medical malpractice. The second element of *Keenan* is also not satisfied.

Based upon the circuit court's reasoning, Attorney Dragisich contends on appeal that the circuit court correctly granted summary judgment because no attorney-client relationship was ever established, and therefore, no duty of representation was owed.

Although we agree that the evidence presented supports an award of summary judgment in favor of Attorney Dragisich, and that no legal malpractice occurred, we base our decision on different reasoning. Namely, while we find that an attorney-client relationship was formed, we also find that it was terminated before any alleged breach of duty occurred.

We have repeatedly held that "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965). *Accord Sherwood Land Co. v. Mun. Planning Comm'n of City of Charleston*, 186 W. Va. 590, 592, 413 S.E.2d 411, 413 (1991); *McJunkin Corp. v. W. Va. Human Rights Comm'n*, 179 W. Va. 417, 423, 369 S.E.2d 720, 726 (1988). Moreover,

> "An appellate court is not limited to the legal grounds relied upon by the circuit court, but it may affirm or reverse a decision on any independently sufficient ground that has adequate support." *Murphy v. Smallridge*, 196 W. Va. 35, 36-37, 468 S.E.2d 167, 168-169 (1996); ("We agree with the Circuit Court, and affirm its decision, although for different reasons than those expressed by the lower court.") *Longwell v. Hodge*, 171 W. Va. 45, 47, 297 S.E.2d 820, 822 (1982). ("This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its

judgment.") Syllabus Point 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

*Banbury Holdings, LLC v. May*, 242 W. Va. 634, ___ n.4, 837 S.E.2d 695, 701 n.4 (2019).

Based on the evidence presented in the parties' briefs and in the appendix record, we find that although an attorney-client relationship was formed when Attorney Dragisich signed the retention letter, there was no breach of any duty because the relationship was terminated when Attorney Dragisich departed the firm and left the case with Attorney Grishkevich. Although the circuit court did not rely on this reasoning in its order granting summary judgment in favor of Attorney Dragisich, that does not matter—it is supported by the facts of the case.

For the Petitioners to succeed on their legal malpractice claim against Attorney Dragisich, they would have to establish not only that he owed them a duty to represent them and breached it, but also that an attorney-client relationship existed at the time of the alleged breach. From the facts presented during the underlying proceedings, it is apparent that an attorney-client relationship was formed between Petitioners and Attorney Dragisich when he met with Plaintiff McCoy and signed a retainer agreement.

In line with Syllabus point 1 of *Keenan*, 64 W. Va. 137, 61 S.E. 806, the record evidence further illustrates that Petitioners had a desire to employ Attorney Dragisich, and that he consented to act as their counsel. Here, Attorney Dragisich testified that prior to signing the retainer agreement, he was approached by Attorney Grishkevich who informed him that he *may* be needed to work on the matter in the future. Although Petitioner McCoy testified that she never met or communicated with Attorney Dragisich, Attorney Dragisich does recall a brief introduction before signing the retainer agreement.

Although it is undisputed that Attorney Dragisich never performed any work for the Petitioners, the clear and plain language of the retainer agreement, as well as the brief encounter between Attorney Dragisich and Petitioner McCoy, establish that an attorney-client relationship was formed. In this regard, the retainer agreement plainly states that it was made and entered into "between Marcy J. Grishkevich, Esq., and Steven E. Dragisich, Esq." and Petitioners. The plain language of the retainer agreement clearly exemplifies the intent of the parties to enter into an attorney-client relationship and demonstrates that Attorney Dragisich both knew that he would possibly be working on the case on behalf of Petitioners, and that he accepted such representation. Such retainer language and actions by Attorney Dragisich, coupled with the parties' brief meeting, are all consistent with—and evidence of—the creation of an attorney-client relationship.

However, the existence of an attorney-client relationship in this matter does not necessarily mean that Attorney Dragisich committed legal malpractice. The crux of this case hinges on one important query: If an attorney-client relationship existed, did it still exist when the alleged breach of duties occurred? Essentially, to succeed on their legal malpractice claim against Attorney Dragisich, Petitioners must establish not only that he owed them a duty and breached that duty, but also that an attorney-client relationship existed at the time of the alleged breach.

Although a legal malpractice suit is a tort and not an action in contract, the elements necessary to prevail in a legal malpractice action are divisible. A plaintiff is required to prove: (1) the

6

attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the client. *Keister v. Talbott*, 182 W. Va. 745, 748-49, 391 S.E.2d 895, 898-99 (1990) (citations omitted).

*McGuire v. Fitzsimmons*, 197 W. Va. 132, 136-37, 475 S.E.2d 132, 136-37 (1996). Here, we are concerned with the first prong: Was Attorney Dragisich still representing the Petitioners when the statute of limitations expired?

A wrongful death claim must be brought within two years from the date of the decedent's death. *See* W. Va. Code § 55-7-6(d). Mrs. Bain died on January 19, 2010; therefore, the statute of limitations would have expired on January 19, 2012. As such, the Petitioners must establish that they had an attorney-client relationship with Attorney Dragisich in January of 2012.

Attorney Dragisich left his employment with Attorney Grishkevich's law firm on April 15, 2011. At that time, an agreement existed which specifically named the files that Attorney Dragisich would be taking with him to his new law firm; everything not specifically named in the agreement would stay with Grishkevich & Curtis, PLLC. The Petitioners' file was *not* listed as a matter that Attorney Dragisich would be taking with him; thus, according to the attorneys' agreement, the Petitioners' file remained with Grishkevich & Curtis, PLLC, following Attorney Dragisich's departure from the firm. During the approximate two-month period between Attorney Dragisich signing the retention letter and leaving the firm, he never completed any work for the Petitioners.

According to the written agreement entered into by Attorneys Dragisich, Grishkevich, and Curtis, it is abundantly clear that Petitioners' case was to be "the sole property and responsibility" of Attorney Grishkevich and her firm as of April 2011. Moreover, the dissolution of the relationship is further evidenced by the actions that occurred after Attorney Dragisich left the firm. On August 30, 2011, the law firm of Grishkevich & Curtis, PLLC, dissolved. Attorney Grishkevich then wrote a letter to Petitioner McCoy on her personal letterhead and noted that the firm was dissolving, but that she and her paralegal were going to continue handling the matter regarding Mrs. Bain. Additionally, Attorney Grishkevich's retention of responsibility for the matter is further evidenced through the correspondence she sent to Mr. Bain—and Petitioner McCoy by copy—on January 10 and January 21, 2012.

From these facts, we find that the Petitioners failed to establish that their attorney-client relationship with Attorney Dragisich existed at the expiration of the statute of limitations. In light of the passage of time, the April 2011 agreement between Attorney Dragisich and Attorney Grishkevich's firm, and Attorney Grishkevich's subsequent letters to Mr. Bain, in conjunction with all of the record cited above, we conclude that any attorney-client relationship between Attorney Dragisich and the Petitioners was terminated long before the expiration of the statute of limitations.

Thus, because the attorney-client relationship between Petitioners and Attorney Dragisich was terminated before the expiration of the statute of limitations, there was no breach of duty by Attorney Dragisich. Therefore, Petitioners' legal malpractice claim must fail as a matter of law.

7

*See McGuire*, 197 W. Va. at 136-37, 475 S.E.2d at 136-37.  For the reasons set forth above, the December 28, 2015 order of the Circuit Court of Hancock County is affirmed.

Affirmed.

**ISSUED**: October 16, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison