LINDA L. HINKLE, *exrx., etc., et al.*

*v.*

THE HON. DONALD F. BLACK, *etc., et al.*

(No. 14617)

Decided December 18, 1979.

*Sterl F. Shinaberry, Hostler & Shinaberry* for petitioners.

*John R. Hoblitzell, Kay, Casto & Chaney* for Cross Concrete.

*Herbert G. Underwood, James M. Wilson, Steptoe & Johnson* for Research-Cottrell.

*Diana Everett, Cather & Renner* for United.

*John B. Garden, R. Noel Foreman, Bachmann, Hess, Bachmann & Garden* for Allegheny, Monongahela and Potomac-Edison.

*Spilman, Thomas, Battle & Klostermeyer, David B. Shapiro, John H. Tinney, McQuire, Woods & Battle, Murray H. Wright* for Pittsburgh Testing.

NEELY, JUSTICE:

On 27 April 1978 the collapse of a cooling tower then under construction at the Pleasants Power Station, Willow Island, Pleasants County, West Virginia, resulted in the deaths of fifty-one men. As a consequence of certain of those deaths, as of 18 June 1979, there were pending in the Circuit Court of Pleasants County twenty civil actions which sought damages for wrongful death from various defendants who were involved in the construction or ownership of the collapsed tower.

On 16 May 1979 seven civil actions seeking damages for the alleged wrongful deaths of persons killed in the

same collapse were filed in the Circuit Court of Wood County. Before the filing of the seven civil actions in Wood County, the Circuit Court of Pleasants County had consolidated all of the then pending Willow Island cases for discovery purposes and ordered all cases arising out of the cooling tower disaster which would subsequently be filed in Pleasants County to be likewise consolidated, subject to plaintiffs' objection, and ordered that the law firm of Preiser & Wilson be appointed "to serve as lead counsel for the purpose of supervising, coordinating, and initiating pretrial discovery on behalf of all plaintiffs in such actions consolidated herewith."

The seven civil actions filed in Wood County were distributed among the three judges of that court, and on 18 June 1979 Research-Cottrell, which was a defendant in each of the wrongful death actions, moved the Circuit Court of Wood County to remove the civil actions filed in that circuit to the Circuit Court of Pleasants County pursuant to *W. Va. Code*, 56-9-1 [1939].[1]

The motion to transfer the actions to Pleasants County was resisted by the plaintiffs in the Wood County litigation and after briefs and argument the respondent, Donald F. Black, Chief Judge of the Circuit Court of Wood County, granted the motion and directed that an order effecting that decision be prepared for entry. Included in Judge Black's findings were his conclusions that:

---

[1] *W. Va. Code*, 56-9-1 [1939] provides:

A circuit court, or any court of limited jurisdiction established pursuant to the provisions of section 1, article VIII of the Constitution of this State, wherein an action, suit, motion or other civil proceeding is pending, or the judge thereof in vacation, may on the motion of any party, after ten days' notice to the adverse party or his attorney, and for good cause shown, order such action, suit, motion or other civil proceeding to be removed, if pending in a circuit court, to any other circuit court, and if pending in any court of limited jurisdiction hereinbefore mentioned to the circuit court of that county: Provided, that the judge of such other circuit court in a case of removal from one circuit to another may decline to hear said cause, if, in his opinion, the demands and requirements of his office render it improper or inconvenient for him to do so.

\* \* \* all Twenty-Seven (27) Civil Actions—Seven (7) pending in the Circuit Court of Wood County, West Virginia, and the Twenty (20) pending in the Circuit Court of Pleasants County, West Virginia, involved common questions of both law and fact, and that they can be consolidated for the purposes of discovery and trial, and the issues of liability and all other matters other than the quantum of damages. If said Civil Actions are consolidated for the determination of all issues other than damages, they will save all parties litigant to all Twenty-Seven (27) Civil Actions much time and money. Such consolidation would avoid (1) duplication of discovery, (2) the duplication of the trial of the issues of liability, and (3) duplication as to other issues. Such consolidation would avoid possible contradictory rulings on the part of the separate circuit courts trying the same.

The plaintiffs in the Wood County action then came to this Court seeking a writ of prohibition and we granted a rule to show cause why the Circuit Court of Wood County had not exceeded its legitimate powers in transferring the civil actions to Pleasants County. We conclude that the Circuit Court of Wood County had jurisdiction to transfer the cases and that in so doing the court did not abuse its discretion; consequently, the writ of prohibition prayed for is denied.

I

The threshold question presented in this case is whether an issue of this type may be reached by a writ of prohibition. This case presents an opportunity to address a subject which has not recently been adequately considered, namely when a litigant can successfully seek a writ of prohibition to serve the office of an interlocutory appeal. In general there is an *embarras de richesses* of creative mandates emanating from actions in prohibition[2] and an utter paucity of cogent analysis of the crite-

---

[2] One of the best examples of creative prohibitionship is *State ex rel. Knight v. Public Service Commission,* ___ W. Va. ___, 245 S.E.2d 144 (1978) where this Court said: "This action arises in

ria which motivate this court to entertain a proceeding in prohibition. In general judges cringe at the bare mention of an "interlocutory appeal" because it conjures the specter of clogged dockets, interminable delays while minor procedural points are shunted from trial court to appellate court and back, and the piecemeal adjudication of causes which could be satisfactorily resolved exclusively in the lower court. To the extent that all of these fears are justified we are adamantly opposed to being in the interlocutory appeals business.

Nonetheless, the classic formulation that a writ of prohibition will issue "in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers," *W. Va. Code*, 53-1-1, [1923] hardly illuminates the variety of circumstances where this Court will grant a rule in prohibition.[3] "There is no sharp line between a court acting in

---

prohibition but we are not quite certain what it is that the relator would have us prohibit, as the statutory scheme in West Virginia permits proposed rate increases to go into effect after one hundred and fifty days *absent* any action by the Public Service Commission. We shall assume *arguendo*, however, for the purposes of this case, that if the challenged statute were unconstitutional some exercise in judicial imagination would permit us to reach the issue on prohibition."

[3] For many years finality was jealously guarded in the Federal system and was "departed from only when observance of it would practically defeat the right to any review at all." *Cobbledick v. United States*, 309 U.S. 323, 324-25 (1940). Since the advent of "supervisory mandamus" which was embraced by a bare majority in *La Buy v. Howes Leather Co.*, 352 U.S. 249 (1957), the reluctance to issue extraordinary writs under the venerable All Writs Act, 28 U.S.C. §1651 has diminished greatly. In *La Buy* the United States Supreme Court held that a writ of mandamus (which in West Virginia practice would be a writ of prohibition since we still observe the common law, historical distinction between administrative officers and judicial officers, *see Beard v. Worrell*, ____ W.Va. ____, 212 S.E.2d 598 (1974)) was properly issued to prohibit a district court judge from transferring a complicated anti-trust case to a master after a significant amount of the litigation had already been completed. The Court admonished that this presented "exceptional conditions" where the Court had "exceeded or refused to exercise its

error under substantive or procedural law and a court acting in excess of its powers if only because every act without jurisdiction or in excess of its powers in a proceeding over which it has jurisdiction of necessity involves an 'error of law.'" *La Rocca v. Lane*, 37 N.Y. 2d 575, 338 N.E.2d 606 (1975), *cert. denied*, 424 U.S. 968 (1976).

We have recognized the simple truth of the *La Rocca, supra*, pronouncement in the variety of circumstances where we have issued writs of prohibition because a court "exceeded its legitimate powers,"[4] but we have

---

functions." 352 U.S. at 257. The Court also included the obligatory phrase that the decision was not opening the floodgates to interlocutory review and that it did not intend "to authorize the indiscriminate use of prerogative writs as a means of reviewing interlocutory orders." 352 U.S. at 255.

The dissent was more realistic and prescient in recognizing the "encouragement to interlocutory appeals offered by this decision" 352 U.S. at 268 (Brennan, J. dissenting). Since *La Buy* "[i]t is beyond question that the supervisory mandamus cases have extended the writs well beyond their traditional role." 16 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3934 at 241 (1977). In both civil and criminal areas the use of the extraordinary writ in Federal review is burgeoning but at least one commentator believes that "stern admonitions that the writs remain reserved for extraordinary situations have been effective in preventing a debilitating rush of petitioners." *Id.* We hope the same will apply in West Virginia!

[4] *State ex rel. Hanley v. Hey*, ___ W.Va. ___, 255 S.E.2d 354 (1979) (writ awarded to prohibit judge from granting probation to an individual who had already been adjudged in a final revocation hearing to have violated a condition of his probation by committing a felony); *State ex rel. Moran v. Ziegler*, ___ W.Va. ___, 244 S.E.2d 550 (1978) (writ awarded to prohibit private prosecutor from continuing to prosecute after defendant had initially contacted the prosecutor to represent him in the same criminal matter); *State ex rel. Winter v. MacQueen*, ___ W.Va. ___, 239 S.E.2d 660 (1977) (writ awarded to prohibit judge from granting probation to an individual who had been convicted of a felony within past five years); *W. Va. Dept. of Highways v. Arbogast*, ___ W.Va. ___, 201 S.E.2d 492 (1973) (writ awarded to prohibit denial of continuance when statute provides that proceedings should proceed after a reasonable time had elapsed for completion of the work and trial court failed to provide reasonable time); and, *Woodall v. Laurita*, ___ W.Va. ___, 195 S.E.2d 717 (1973) (writ denied but petitioner successfully demon-

been unable to articulate functional rules which instruct the bar when their attempts to invoke this Court's discretionary jurisdiction will meet with success. It is to this undertaking that we shall now proceed with some trepidation.

Since the key word in any analysis of prohibition must be "discretionary" unless this Court is to take on the character of an appellate squire's court, we are confounded for that reason by insurmountable conceptual hurdles to constructing iron-clad rules about when prohibition will issue. We can initially, however, perform one service for litigants and the bar, namely explain that once a rule to show cause in prohibition has issued it is unnecessary to brief the procedural question of whether prohibition is the appropriate remedy under prior case law. This Court is sufficiently familiar with all the law surrounding the writ or prohibition that three or four pages of brief dedicated to a repetition of rules about prohibition lying only when a trial court has "exceeded its legitimate powers" is a waste of litigant money and lawyer and court time. It shall be sufficient hereafter in prohibition cases to state the simple proposition that prohibition is not the appropriate remedy arguing the functional criteria of this case or alternatively that prohibition is the appropriate remedy using the same criteria.

When then will prohibition be considered the appropriate remedy and a rule to show cause issue? At the heart of the matter are two functional criteria: first, the adequacy of another remedy such as appeal; second, economy of effort among litigants, lawyers and courts.[5] Fur-

___

strated a multiplicity of pretrial errors by the prosecuting attorney that resulted in egregious failures of due process, however, rendered moot by subsequent prosecuting attorney who admitted error of predecessor.)

[5] The federal appellate courts have wrestled with the problem of formulating objective principles to guide the use of their power to issue extraordinary writs. The Ninth Circuit recently helped frame the boundaries of this power by suggesting guidelines gleaned from cases that granted extraordinary relief. That court set out the following five guidelines for practical application:

thermore, there is a gloss which surrounds both previous criteria, namely a question of good faith. Whenever the Court believes that a prohibition petition is interposed for the purpose of delay or to confuse and confound the legitimate workings of the criminal or civil process in the lower courts, a rule will be denied. In this regard it should be noted that in the last ten years we are unable to find any prohibition cases arising during a trial.

Obviously there are prohibition proceedings which come squarely within the classic definition of "when the inferior court has not jurisdiction of the subject matter in controversy" *Code*, 53-1-1 [1923] as when, for example, a magistrate court undertakes to try title to real estate or a circuit court undertakes to adjudicate the rights of non-residents who have not properly been served with process.[6] Many cases, however, are entertained under the catch-all "exceeds its legitimate powers" *Code*, 53-1-1 [1923] and there the operative thought process of this Court in granting a rule involves a weighing of the gravity of the harm to be caused by pre-trial error versus the efficacy of an alternative remedy. *See* "The Writ of Prohibition in New York—Attempt to Circumscribe an Elusive Concept," 50 *St. John's Law Review* 76 [1976].

In the case before us we had an excellent *prima facie* showing of grounds for relief in prohibition at the time the rule issued; while we have concluded after looking at

---

"(1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. * * * (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal (This guideline is closely related to the first). * * * (3) The district court's order is clearly erroneous as a matter of law. * * * (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. * * * (5) The district court's order raises new and important problems, or issues of law of first impression." *Bauman v. United States District Court*, 557 F.2d 650, 654-55 (9th Cir. 1977) (citations omitted).

[6] Or when one trial court judge interferes with the service of lawful process of another trial court judge. *State ex rel. Shamblin v. Dostert*, ___ W.Va. ___, 255 S.E.2d 911 (1979).

the merits that the trial court acted properly, that is a determination on the merits and not on the appropriateness of the prohibition remedy. If the trial court had acted improperly in this case there would have been no *effective* remedy by appeal. The petitioners alleged that they were entitled to a jury trial in the forum of their choice and that the Parkersburg forum would give them a jury with a substantially higher likelihood of a generous award. Had they been correct, yet been forced to trial in Pleasants County, they might have received a generous award, but arguably not as generous as they would have received in Wood County. What would they then be able to do? Appeal a verdict for half a million dollars in the hopes of getting a new trial with a larger award? Few plaintiffs' lawyers will trade good awards for the hope of excellent awards when there is a risk of losing all.

Consequently, in the case before us the adequacy of a remedy by appeal was wholly theoretical and not at all practical. The same applies in criminal cases where the issue is double jeopardy; a defendant may be put to $25,000 worth of legal fees, months of agony (possibly in jail) and a year in prison or the county jail while this Court considers a full appeal. That is hardly adequate! Furthermore, in terms of judicial economy it is far more efficient for this Court to prohibit a trial when the defendant presents a good double jeopardy plea than it is to have the lower court spend court time, jury fees, witness fees, transcript expenses, and prosecutor resources only to discover two years later that the trial was a nullity. The cases where double jeopardy has not been found a good ground are seldom reported because this court does not issue the rule in the first place. This Court's time is not so valuable that we cannot spend ten man hours (staff included) to save three hundred man hours below and $30,000 in expense. The reported cases generally reveal at least one rule, namely, that whenever lawyers feel that they have been outrageously abused by incorrect trial court rulings they come to this Court seeking justice and this Court has frequently respond-

ed.[7] The salutary restraints upon excessive attempts to invoke prohibition are two: first, a recognition on the part of the bar that frivolous cases will fall upon deaf ears; second, a recognition of the expense and time involved in going through an essentially vain process.

In most of the cases where a rule has been issued the question has been exclusively legal and not a mixed question of fact and law. This court is not engineered to be as efficient a finder of fact as a trial court because of the cumbersome procedures for taking depositions. When, however, there is a clear legal question it is often efficient to come in prohibition. Furthermore, a remedy by appeal of a crucial but erroneous legal ruling is frequently quite inadequate, particularly if we are realistic in our definition of "adequacy" and recognize that part of adequacy has to do with expense and time. However, where the proper resolution of the legal question first depends upon a proper finding of disputed facts, then the efficiency of prohibition disappears because of mechanical problems in fact finding inherent in multi-member courts. In that event, surely, the relative adequacy of a remedy by appeal becomes correspondingly enhanced.

We fear that prohibition may become a dragnet by means of which questions appropriate for the trial court will erroneously be brought before our Court; nonetheless, this Court invites opportunities to correct substantial, clear-cut, legal errors where there is the high probability that the trial will be completely reversed if the error is not corrected in advance. Examples of this type of error have been: proceedings predicated on unconstitutional statutes;[8] improper joinder of parties defend-

---

[7] *Schweppes U.S.A. Limited v. Kiger,* ___ W.Va. ___, 214 S.E.2d 867 (1975); *State ex rel. Stanek v. Kiger,* 155 W.Va. 587, 185 S.E.2d 491 (1971); *State ex rel. Judy v. Kiger,* 153 W.Va. 764, 172 S.E.2d 579 (1970); and, *State ex rel. Kiger v. Hancock,* 153 W.Va. 404, 168 S.E.2d 798 (1969).

[8] *State ex rel. Daily Mail Publishing Co. v. Smith,* ___ W.Va. ___, 248 S.E.2d 269 (1978) *aff'd.* ___ U.S. ___, 99 S.Ct. 2667 (1979), (prohibited proceedings under statute that prevents newspapers

ant;[9] awards of alimony in favor of a guilty party against whom a divorce has been granted;[10] proceedings in direct contravention of a clear, positive command of the State or Federal constitutions;[11] proceedings in contravention of a clear, positive command of a statute;[12] *et hoc genus omne.*

---

from publishing name of child in a proceeding under child welfare statute which was held unconstitutional); *Pinkerton v. Farr,* ___ W.Va. ___, 220 S.E.2d 682 (1975) (prohibited proceedings under felonious assault statute that destroyed presumption of innocence, infringed upon right against self-incrimination, and failed to provide proof of guilt beyond reasonable doubt); and, *Simms v. Dillon,* 119 W.Va. 284, 193 S.E. 331 (1937) (Court stated for the first time that prohibition lies to test constitutionality of a statute although denied writ and held condemnation proceedings under statute to be constitutional.)

[9] *State ex rel. Whitman v. Fox,* ___ W.Va. ___, 236 S.E.2d 565 (1977).

[10] *Beard v. Worrell,* ___ W.Va. ___, 212 S.E.2d 598 (1974).

[11] *State ex rel. Dowdy v. Robinson,* ___ W.Va. ___, 257 S.E.2d 167 (1979) (prohibited proceedings that violated protection against double jeopardy); *Bullett v. Staggs,* ___ W.Va. ___, 250 S.E.2d 38 (1978) (prohibited proceedings until indigent accused of misdemeanor was afforded assistance of counsel); *State ex rel. Peck v. Goshorn,* ___ W.Va. ___, 249 S.E.2d 765 (1978) (prohibited proceedings when party was denied due process when received no notice of appeal); *State ex rel. W.Va. Truck Stops v. McHugh,* ___ W.Va. ___, 233 S.E.2d 729 (1977) (prohibited proceedings when right to jury denied on a counterclaim); *State ex rel. Peacher v. Sencindiver,* ___ W.Va. ___, 233 S.E.2d 425 (1977) (writ denied on merits where accused not granted a neurological examination before trial and where felony-murder statute declared constitutional). *Williams v. Brannen,* 116 W.Va. 1, 178 S.E. 67 (1935) (prohibited proceedings when party was denied due process when judge had pecuniary interest in the outcome of the case).

[12] *Arlan's Dept. Store of Huntington, Inc. v. Conaty,* 253 S.E.2d 522 (1979) (writ granted to prevent reinstatement on the docket in contravention of statute where no good cause shown); *State ex rel. C.A.H. v. Strickler,* ___ W.Va. ___, 251 S.E.2d 222 (1979) (writ granted to prevent placement of child in prison-like facility for a status offense when no consideration given to statutory requirement of "least restrictive" alternative); *Sate ex rel. McCartney v. Nuzum,* ___ W.Va. ___, 248 S.E.2d 318 (1978) (writ granted to prevent neglect proceeding where no facts of case would support the petition under statutory definition of "neglect"); and, *State ex*

Consequently, when litigants apply for a writ of prohibition they should concisely set forth their reasons for believing that the particular action of the trial court of which they complain creates grave harm and the reasons that alternative remedies fail to provide adequate relief. In this regard the word "adequate" must subsume in its definition such considerations as speed, cost, and the difficulty of separating issues on appeal. The purpose of this analysis of prohibition is not to expand the use of the writ beyond our current practice, but rather to explain the thought process which the Court appears to be employing so that litigants can respond more effectively. In addition we help shorten the gap between experienced West Virginia practicioners and out-of-state or inexperienced, young lawyers who must instruct themselves through written opinions rather than informal lore at the bar.

## II

The petitioners in the case before us assert that the provisions of *W. Va. Code,* 56-9-1 [1939] have been superseded by Rule 42b, *W.Va. RCP.* We agree that to the extent that statutes relating to pleading, practice and procedure are inconsistent with or repugnant to the *Rules of Civil Procedure* they are no longer in force and effect as mandated by *W. Va. Code,* 51-1-4 [1935]. However, we find no inconsistency between the statute which provides that a party may move a circuit court in which an action is pending to transfer it to any other circuit if good cause is shown and Rule 42b which allows the court in which the first of two or more related actions is pending to order all actions transferred to it. The statute and the Rule are opposite sides of the same coin; the first permits one circuit judge to transfer a case to another circuit for good cause and the second permits a judge to summon cases to his circuit when his court was the first in which one of related actions was filed. Both

---

*rel. Smith v. Scott,* ___ W.Va. ___, 238 S.E.2d 223 (1977) (writ granted to prevent transfer proceedings where no data provided to allow court to make transfer under the statute).

statute and Rule are designed to accomplish one goal, namely provide for a system which will give consistent economical, efficient relief. Accordingly, since there is no inconsistency between the statute and the rule, we hold that the respondent judge of Wood County had jurisdiction under the statute to order the cases transferred.

## III

Petitioners further allege that even if the respondent judge had jurisdiction to transfer the cases he abused his discretion in so doing since the plaintiffs were entitled to a jury trial in any forum of their choice with proper jurisdiction and venue. This confronts us with the need to reconcile conflicting public policies: the first is to "secure the just, speedy, and inexpensive determination of every action" Rule 1, *W.Va. RCP;* the second is to assure that a plaintiff may choose the forum which is most convenient for him.[13] The respondent Criss Concrete Company filed a number of exhibits in this prohibition proceeding, among which were included 286 pages of depositions already taken along with over 200 printed pages of interrogatory questions. One can imagine the volume of the answers which will be submitted in response! There are nine corporate defendants and 27 individual plaintiffs in these actions. Furthermore, it appears that the suit will focus upon enormously complex factual questions involving principles of engineering which will be intertwined with equally complex legal issues concerning workmen's compensation immunity, warranty, products liability, negligence, and comparative negligence. The petitioners assert that since Wood

---

[13] When the United States Supreme Court considered the principle of *forum non conveniens* they concluded that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil v. Gilbert,* 330 U.S. 501, 508 (1947). However, notwithstanding a policy permitting a plaintiff to choose his forum, the Court was willing to balance against the plaintiff's choice "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* We construe Rule 42(b) *W. Va. RCP* and *Code,* 56-9-1 [1939] as providing, in appropriate cases, a viable counterpart to 28 *U.S.C.* 1404 [1962].

County is an urban county, the potential jury award would be higher because urban juries tend to be more generous than rural juries. A look at the State map, however, demonstrates that Pleasants County is directly adjacent to Wood County and it is obvious that the residents of Pleasants County enjoy a general participation in the business, industry, and commerce of the Parkersburg area. As this Court indicated in *State ex rel. Whitman v. Fox,* \_\_\_ W.Va. \_\_\_, 236 S.E.2d 565 (1977) the consideration of judicial economy cannot outweigh injury to the litigants in a circumstance where the economical procedure is at direct odds with overall fairness or equity; however, the Court concludes that in light of community of interest between Wood County and Pleasants County the disadvantage to the plaintiffs is speculative at best while the advantages of consolidation in terms of both economy and consistency are quite real and substantial. Furthermore we find that Pleasants County is as convenient a forum for the plaintiffs as Wood County and that they are not put to any significant increased expense or aggravation in prosecuting their claim in Pleasants County.

Accordingly for the reasons set forth above the writ of prohibition is denied.

*Writ denied.*

CAPLAN, JUSTICE, *concurring:*

While I agree with the decision to deny the writ in this case, I am not in agreement with much of the dissertation in the opinion relative to the function of the extraordinary remedy of prohibition. Preliminarily, I do not agree that the subject of prohibition "has not recently been adequately considered." The decisions of this Court, recent and throughout the years, which have, with clarity, instructed the bench and bar on the proper use of prohibition, are indeed legion and the purported instruction contained in the opinion, which I believe in large part is erroneous, tends to confuse rather than aid.

My basic disagreement goes to the general tenor of the opinion, wherein, despite the writer's protestation that "we are adamantly opposed to being in the interlocutory appeals business", we are instructed that we may use prohibition as an interlocutory appeal to correct "clear-cut, legal errors where there is the high probability that the trial will be completely reversed if the error is not corrected in advance." This over-simplification may sound of Solomonic justice at first blush, but I submit that the efficacy of prohibition, designed to serve an extraordinary purpose, will suffer by its implementation.

Which clear errors may be corrected by a writ of prohibition? Upon the admission of clear hearsay testimony, do we interrupt the trial and proceed in this Court in prohibition? Upon the giving of an erroneous instruction, is there to be another interruption of the trial to correct what appears to be clear error? The answers to these queries should be obvious—a trial could be subjected to unreasonable delay and endless shuttling from trial to appellant court. No, I do not, as suggested by the writer of the opinion, "cringe at the bare mention" of interlocutory appeal—interlocutory appeal, properly used, serves a proper function in our jurisprudence—but I do "cringe" at the cavalier manner in which the Court, in this case, has subverted the clear and well established office of the writ of prohibition.

To carry out the teachings of the opinion could, and probably will, result in the piecemeal handling of litigation. This was deplored by the writer of the opinion in *Woodall v. Laurita*, 156 W.Va. 707, 195 S.E. 2d 717 (1973) in the following language: "The piecemeal challenge of discretionary rulings through writs of prohibition does not facilitate the orderly administration of justice." It is my firm conviction that the pronouncements in the opinion in relation to the function of the writ of prohibition are far too broad, that they obliterate the distinction between that extraordinary remedy and appeal and that the use of prohibition in the manner prescribed will cause confusion and delay in the trial of cases.