IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2020 Term

_____

No. 19-0772

_____

FILED
March 6, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel.
JOHNSON & FREEDMAN, LLC,
and DAVID C. WHITRIDGE,
Petitioners

v.

THE HONORABLE WARREN R. McGRAW,
Judge of the Circuit Court of Wyoming County, and
NADINE R. RICE,
Respondents.

_____

ORIGINAL PROCEEDING IN PROHIBITION

WRIT DENIED

_____

Submitted: January 15, 2020
Filed: March 6, 2020

J. Mark Adkins, Esq.                         Samuel A. Hrko, Esq.
Joshua A. Lanham, Esq.                       BAILEY & GLASSER, LLP
BOWLES RICE LLP                              Charleston, West Virginia
Charleston, West Virginia
Counsel for Petitioners                      Scott S. Segal, Esq.
                                             THE SEGAL LAW FIRM
                                             Charleston, West Virginia
                                             Counsel for Respondents


JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "Where prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge its jurisdiction, the appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of powers is so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue."  Syllabus Point 2, *Woodall v. Laurita*, 156 W. Va. 707, 195 S.E.2d 717 (1973).

2.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law,

should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

WALKER, Justice:

Nadine R. Rice filed a complaint in the Circuit Court of Wyoming County in 2010 claiming that Homecomings Financial, LLC and Petitioners Johnson & Freedman, LLC, and David C. Whitridge negligently ejected her from her home.  For various reasons, including the bankruptcy of Homecomings, Ms. Rice's case did not progress.  In February 2019, Petitioners moved the circuit court to dismiss the case with prejudice under West Virginia Rule of Civil Procedure 41(b).  The circuit court denied Petitioners' motion, concluding that good cause justified Ms. Rice's delay and that Petitioners would not be substantially prejudiced if the case continued.  Petitioners now ask this Court to issue a writ prohibiting the circuit court from enforcing its order denying their motion.  Because Petitioners have not shown that the circuit court's order is either clearly erroneous as a matter of law or a flagrant abuse of its discretion, we deny the writ.

## I.   PROCEDURAL BACKGROUND

Ms. Rice sued Homecomings and Petitioners in the Circuit Court of Wyoming County in May 2010.  She made two claims against Homecomings (Count I, quiet title; Count II, unlawful detainer/ejectment) and five claims against Homecomings and Petitioners (Count III, trespass; Count IV, abuse of process; Count V, negligence;

1

Count VI, negligent infliction of emotional distress; and County VII, punitive damages). Ms. Rice served the summonses and complaints in July 2011.[1]

Petitioners answered Ms. Rice's complaint in August 2011. Homecomings answered that same month and filed a cross-claim against Petitioners for contribution and indemnification. Petitioners answered Homecomings' cross-claim in December 2011 and asserted their own cross-claim for contribution. That same month, Ms. Rice served answers to Homecomings' first set of discovery requests. In April 2012, Petitioners answered discovery served by Homecomings and produced 152 pages of documents.

Homecomings filed for Chapter 11 bankruptcy on May 14, 2012. It also filed a Notice of Bankruptcy and Effect of Automatic Stay with the circuit court. Approximately four years later, on April 26, 2016, Homecomings filed a Bankruptcy Status Report stating that the Bankruptcy Court had approved its Chapter 11 plan on December 11, 2013 and that the Chapter 11 plan and an accompanying order had "enjoin[ed] all parties from 'commencing or continuing in any manner or action or other proceeding of any kind' relating to claims that are released under the [Chapter 11 plan]." The Status Report also relayed that Petitioners did not file a proof of claim in the bankruptcy case so they could not prosecute their cross-claim for contribution from Homecomings in circuit court. But, Ms. Rice had filed the requisite proof of claim and had settled with Homecomings in the

---

[1] Ms. Rice states that between May 2009 and July 2011, the parties informally exchanged documents and information and engaged in settlement negotiations.

bankruptcy. By agreed orders, the circuit court dismissed all of the claims against Homecomings (including Petitioners' cross-claims) in November 2016. After November 2016, only Ms. Rice's claims against Petitioners remained.

In February 2019, Petitioners moved to dismiss Ms. Rice's remaining claims with prejudice under West Virginia Rule of Civil Procedure 41(b)[2] because she had failed to prosecute her claims for approximately eight years—that is, from the time she served the summonses and complaints in 2011 until 2019. Ms. Rice responded that Homecomings' bankruptcy stalled the case from 2012 until late in 2016 and that the parties' counsel had communicated several times about "getting the matter back on track." Ms. Rice also stressed that dismissal under Rule 41(b) is a matter left to the circuit court's discretion, good cause supported her delay, and the delay had not prejudiced Petitioners. Petitioners replied that Ms. Rice had failed to show good cause for her inactivity after the

---

[2] Rule 41(b) states in pertinent part:

> **(b) Involuntary dismissal; effect thereof.** For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits.

> Any court in which is pending an action wherein for more than one year there has been no order or proceeding . . . may, in its discretion, order such action to be struck from its docket; and it shall thereby be discontinued.

bankruptcy court lifted the stay in 2013, that they were not responsible for helping her get her case "back on track," and that Ms. Rice's inactivity showed that dismissal would not prejudice her. The circuit court conducted a hearing on Petitioners' motion on April 17, 2019.

In an order dated May 9, 2019, the circuit court denied Petitioners' motion, reasoning that dismissal under Rule 41(b) was a harsh sanction appropriate only in flagrant cases to be imposed at a court's discretion. The circuit court also found that the stay attendant to Homecomings' bankruptcy was good cause for Ms. Rice's delay and that the delay had not prejudiced Petitioners. They now seek a writ from this Court prohibiting the circuit court from enforcing its May 9, 2019 order.

## II.  STANDARD OF REVIEW

Petitioners seek an extraordinary writ to prevent the circuit court from acting beyond what they contend are the court's legitimate powers. In *Woodall v. Laurita*, we described the circumstances when this Court will exercise it original jurisdiction to grant prohibition:

> Where prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge its jurisdiction, the appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of powers is so flagrant and violative

4

of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue.[3]

Subject to this Court's discretion, a petitioner may satisfy that exacting standard in two ways. First, the petitioner may demonstrate that the court has committed a clear error of law that is "substantial, clear-cut, [and] plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts . . . ."[4] Or, second, the petitioner may show that the court has abused its discretion in an extraordinary way, that is, in circumstances demonstrating more than a "simple abuse of discretion by the trial court."[5]

To determine whether to exercise our discretion to grant a writ of prohibition, we also consider the familiar factors of *State ex rel. Hoover v. Berger*. Those factors are:

> (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way

---

[3] Syl. Pt. 2, *Woodall v. Laurita*, 156 W. Va. 707, 195 S.E.2d 717 (1973).

[4] Syl. Pt. 1, in part, *Hinkle v. Black*, 164 W. Va. 112, 262 S.E.2d 744 (1979) *superseded by statute as stated in State ex rel. Thornhill Grp., Inc. v. King*, 233 W. Va. 564, 570, 759 S.E.2d 795, 801 (2014). *See also State ex rel. W. Va. Reg'l Jail Auth. v. Webster*, --- W. Va. ---, 836 S.E.2d 510, 518 (2019) ("'Moreover, a court commits clear legal error when it incorrectly chooses, interprets, or applies the law.'") (internal quotation omitted). (quoting *Geering v. King*, 906 N.W.2d 214, 218 (2017)).

[5] Syl. Pt. 2, in part, *State ex rel. Peacher v. Sencindiver,* 160 W. Va. 314, 233 S.E.2d 425 (1977). *But see State ex rel. W. Va. Dep't of Health & Human Res. v. Dyer*, --- W. Va. ---, 836 S.E.2d 472, 481 (2019) (recognizing that, in the context of abuse and neglect proceedings, the Court "has not hesitated to grant extraordinary relief when the circuit court has so misapprehended the evidence or law in its allowance of an improvement period such that it has jeopardized a child's well-being, best interests, or right to permanency").

that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.[6]

Importantly, the *Hoover* factors elaborate on, but do not relax, the standards articulated by this Court in earlier precedent. We now apply the authority cited above to the petition before us.

## III. DISCUSSION

We summarize the parties' positions regarding the length of the inactivity in Ms. Rice's case before turning to Rule 41(b) and the substance of Petitioners' arguments. Petitioners maintain that Ms. Rice was not subject to the stay imposed by Homecomings' bankruptcy in 2012. According to Petitioners, this means that she was free to proceed with her case, but did not, from July 2011 (when she served the summonses and complaints) until they filed their motion to dismiss for inactivity under Rule 41(b) in February 2019— a period of 91 months. On the other hand, Ms. Rice asserts that the bankruptcy stay and the ensuing injunction prevented her from prosecuting her claims against Petitioners until April 2016, when Homecomings filed the Bankruptcy Status Report. Ms. Rice also argues that, while the case docket may not reflect activity on her part between April 2016 and

---

[6] Syl. Pt. 4, in part, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

6

February 2019, she corresponded with Petitioners during that time in hopes of getting her case "back on track." To resolve these arguments, we first review Rule 41(b).

## A. *West Virginia Rule of Civil Procedure 41(b)*

Petitioners seek a writ to prohibit the circuit court from enforcing its order denying their motion to dismiss Ms. Rice's claims under West Virginia Rule 41(b). Rule 41(b) states that "[a]ny court in which is pending an action wherein for more than one year there has been no order or proceeding . . . may, in its discretion, order such action to be struck from its docket; and it shall thereby be discontinued." The rule empowers a circuit court to, "in its discretion, dismiss a case when there has been a lack of activity in the case for more than one year."[7]

Rule 41(b) enables a circuit court to control its docket and to ensure that a plaintiff fulfills her "continuing duty to monitor a case from the filing until the final judgment . . . ."[8] The rule "prevent[s] undue delays in the disposition of pending cases [and avoids] congestion in the calendar of the circuit court."[9] But, the law also favors the resolution of disputes on their merits and a dismissal under Rule 41(b) does not accomplish that. Instead, dismissal under the rule penalizes a plaintiff for neglecting her claims and

---

[7] *Caruso v. Pearce*, 223 W. Va. 544, 547, 678 S.E.2d 50, 53 (2009).

[8] *Dimon v. Mansy*, 198 W. Va. 40, 45, 479 S.E.2d 339, 344 (1996).

[9] *Id.*

7

bars her from re-litigating them.[10]  That is a harsh sanction which drove the concern expressed in *Dimon* that "[t]he sanction of dismissal with prejudice for the lack of prosecution . . . could, if used excessively, disserve the dignitary purpose for which it is invoked."[11]  To safeguard against overuse of the sanction, we explained in *Dimon* that "the determination whether the plaintiff has failed to move the case in a reasonable manner is a discretionary call for the circuit court," but one that is "appropriate only in flagrant cases."[12]

In *Dimon*, we announced a burden-shifting framework to guide a circuit court's determination of whether a Rule 41(b) dismissal is "a reasonable response to the problems and needs that provoked its use."[13]  Initially, "the plaintiff bears the burden of going forward with evidence as to good cause for not dismissing the action[.]"[14]  Assuming she does so, "the burden then shifts to the defendant to show substantial prejudice to it in allowing the case to proceed[.]"[15]  Again, assuming the defendant meets that burden, the

---

[10] *See Dimon* at 198 W. Va. at 45, n.3, 479 S.E.2d at 344, n.3.

[11] *Id*. at 45, 479 S.E.2d at 344.

[12] *Id*.

[13] *Id*.

[14] Syl. Pt. 3, in part, *Dimon*, 198 W. Va. at 40, 479 S.E.2d at 339.

[15] *Id*.

8

plaintiff then must "establish that the proffered good cause outweighs the prejudice to the defendant."[16]

*Dimon* was an appeal. Here, Petitioners seek a writ to prohibit enforcement of the circuit court's order denying their motion to dismiss. That distinction matters. Because Petitioners seek extraordinary relief, we review the circuit court's order for a substantial and clear legal error or a flagrant abuse of discretion in either its finding that Ms. Rice established good cause for her delay or that the delay did not substantially prejudice Petitioners. We first consider good cause.

### B. Good Cause

Under the *Dimon* burden-shifting framework, once a defendant makes a Rule 41(b) motion to dismiss, the plaintiff must put on evidence of good cause for not dismissing the action. The circuit court found that the automatic stay imposed by Homecomings' bankruptcy was good cause for Ms. Rice's delay. Petitioners argue that this is a clear error of law for two reasons.[17] First, they argue that under the bankruptcy

---

[16] *Id.*

[17] Petitioners frequently label the same alleged error as a "clear error of law" and a "flagrant abuse of discretion." A "'court commits clear legal error when it incorrectly chooses, interprets, or applies the law.'" *State ex rel. W. Va. Reg'l Jail Auth.*, 836 S.E.2d at 518 (internal quotation omitted) (quoting *Geering*, 906 N.W.2d at 325). We place the most emphasis on whether a circuit court has committed clear legal error when we decide whether to grant extraordinary relief. *See* Syl. Pt. 4, *Hoover*, 199 W. Va. at 12, 483 S.E.2d at 12. So, we focus our analysis on the presence, or absence, of clear legal error in the circuit court's order.

9

code and federal case law, the bankruptcy stay applied only to Ms. Rice's claims against Homecomings and not to her claims against them. So, they conclude, the circuit court committed a clear error of law by relying on the stay as good cause for Ms. Rice's delay. Second, because Ms. Rice delayed her case far longer than recent cases in which this Court has affirmed dismissals under Rule 41(b), Petitioners argue that the circuit committed clear legal error when it denied their motion and permitted her case to remain on the docket. Ms. Rice responds that the circuit court was not clearly wrong when it concluded that the bankruptcy stay applied to her claims against Petitioners. She also asserts that, contrary to Petitioners' claims, she participated in discovery before the bankruptcy stay was imposed and tried to further her case after 2016, when the injunction attendant to Homecomings' bankruptcy ended.

Upon review of the record, we do not see that Petitioners raised to the circuit court the argument that the stay attendant to Homecomings' bankruptcy did not apply to Ms. Rice's claims against them. Petitioners complain that the circuit court did not consider the impact of 11 U.S.C. § 362(a)—which, they contend, only places an automatic stay on claims made against the debtor, here, Homecomings—but we do not find that statute referenced by Petitioners before or during the April 2019 hearing. In fact, we see that Petitioners took the opposite position. Specifically, their proposed order submitted to the circuit court granting their motion to dismiss stated: "After December 17, 2013, the bankruptcy stay was lifted, and Plaintiff possessed the ability to prosecute her claims against Defendants." That statement directly contradicts the argument they make now:

10

that Ms. Rice could and should have furthered her claims against them since 2011, even while the stay in Homecomings' bankruptcy was in effect.

Generally, "when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal."[18] That rule also applies to petitions brought under our original jurisdiction.[19] In *State ex rel. State Farm Mutual Auto. Ins. Co. v. Bedell*, a proceeding in prohibition, petitioner State Farm raised an issue before this Court that it had not argued before the circuit court.[20] The Court applied the general waiver rule to State Farm's petition because "it would be inappropriate for this Court to inform the circuit court it has acted wrongly when it did not have an opportunity to address the matter in the first instance."[21] Similarly, in *State ex rel. Tucker County Solid Waste Authority v. West Virginia Division of Labor*, we refused to consider an argument raised for the first time in a petition for a writ of prohibition because we did not "have a record upon which to base our decision of issues

---

[18] *Whitlow v. Bd. of Educ. of Kanawha Cty.*, 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993).

[19] W. Va. Code § 51-1-3 (2018) ("The supreme court of appeals shall have original jurisdiction in cases of habeas corpus, mandamus and prohibition."). *See, e.g.*, *State ex rel. Almond v. Rudolph*, 238 W. Va. 289, 298–99, 794 S.E.2d 10, 19–20 (2016); *State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell*, 228 W. Va. 252, 264–65, 719 S.E.2d 722, 734–35 (2011).

[20] *State ex rel. State Farm Mut. Auto. Ins. Co.*, 228 W. Va. at 264–65, 719 S.E.2d at 734–35.

[21] *Id*. at 265, 719 S.E.2d at 735.

11

raised in [the] case" so we did not have "the factual evidence necessary for us to determine the issue."[22] For those same reasons, we will not consider Petitioners' argument that the bankruptcy stay did not apply to Ms. Rice's claims against them. We cannot conclude that the circuit court misunderstood the effect of the bankruptcy stay upon Ms. Rice's claims against Petitioners when Petitioners did not give the circuit court the opportunity to rule on that argument.

Petitioners contend that the circuit court's finding of good cause is clear legal error for another reason. They assert that the circuit court's decision contravenes the holdings of four recent memorandum decisions in which we affirmed the dismissal of cases under Rule 41(b) for periods of inactivity ranging from 13 to 18 months.[23] Indisputably, the delays in these cases are far shorter than any delay in Ms. Rice's case. But, in those cases, we did not place an absolute ceiling on the length of time a circuit court may permit an inactive case to remain on its docket. Rule 41(b) requires more than one year to pass in a pending action without an order or proceeding before a circuit court is *permitted* to dismiss the case for inactivity. But, the rule does not *require* a circuit court to dismiss a case that has been inactive for more than a year. That is a "discretionary call for the circuit

---

[22] *State ex rel. Tucker Cty. Solid Waste Auth. v. W. Va. Div. of Labor*, 222 W. Va. 588, 602, 668 S.E.2d 217, 231 (2008).

[23] Petitioners informed the circuit court of these cases in their "Memorandum of Law in Support of the [Petitioners'] Rule 41(b) Motion to Dismiss."

court."[24]  In other words, Rule 41(b) sets a floor (more than one year) but it does not set a ceiling.[25]  The rule leaves that to the discretion of the circuit court.

In each of the cases cited by Petitioners, we affirmed the circuit courts' exercise of discretion and not their application of a clear rule of law.  For example, in *Meade v. West Virginia Division of Corrections*, we found that the circuit court did not abuse its discretion under Rule 41(b) when it denied plaintiff's motion to reinstate her case after thirteen and one-half months of inactivity.[26]  Similarly, in *Raab v. Marshall*, we affirmed dismissal of a case under Rule 41(b) based upon a thirteen-month delay because "we [did] not find any abuse of discretion in the circuit court's dismissal and refusal to reinstate" plaintiff's case.[27]  And, we likewise found in *Arbogast v. Ally Financial, Inc.* and *Whiting v. Marion County Sheriff's Department* that the dismissal of those cases under Rule 41(b) was not an abuse of the circuit courts' discretion.[28]

---

[24] *Dimon*, 198 W. Va. at 45, 479 S.E.2d at 344.

[25] *See, e.g.*, *Cent. W. Va. Reg'l Airport Auth. v. Canady*, 181 W. Va. 811, 814, 384 S.E.2d 852, 855 (1989) (denying writ to prohibit the enforcement of an order reinstating a case in which eight years passed between the filing of the complaint and service of process).

[26] *Meade v. W. Va. Div. of Corr.*, No. 13-0983, 2014 WL 1672938, at *5 (W. Va. Apr. 24, 2014).

[27] *Raab v. Marshall*, No. 13-0249, 2013 WL 5966972, at *4 (W. Va. Nov. 8, 2013).

[28] *Arbogast v. Ally Fin., Inc.*, No. 12-0363, 2013 WL 1632150, at *1 (W. Va. Apr. 16, 2013) (finding that circuit court did not abuse its discretion by dismissing case after eighteen months of inactivity); *Whiting v. Marion Cty. Sheriff's Dept.* No. 11-0575, 2012

Petitioners have not cited any case in which this Court has held that dismissal under Rule 41(b) is mandatory when a plaintiff has let her case lie dormant for a certain period of time. Lacking that definitive statement in either the rule or our cases applying it, Petitioners have not demonstrated that the circuit court's order denying their motion to dismiss Ms. Rice's claims is an error of law that is "substantial, clear-cut, [and] plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts . . . ."[29] For those reasons, we conclude that the circuit court did not clearly err as a matter of law when it denied Petitioners' motion to dismiss Ms. Rice's claims under Rule 41(b).[30]

---

WL 4373177, at *1 (W. Va. Sept. 21, 2012) (circuit court did not abuse its discretion when it dismissed case for delay of "more than one year").

[29] Syl. Pt. 1, in part, *Hinkle*, 164 W. Va. at 112, 262 S.E.2d at 744.

[30] Petitioners also contend that the circuit court clearly erred as a matter of law when it found that the delays in Ms. Rice's case did not cause them substantial prejudice. They argue that they have suffered substantial prejudice because the delays will seriously hinder their ability to engage in discovery and to prepare a sufficient defense. Ms. Rice responds that Petitioners neither argued prejudice nor produced evidence of it before the circuit court, and, even if they had, the parties participated in some discovery before the bankruptcy stay took effect in 2012. We have reviewed Petitioners' briefing before the circuit court and the April 17, 2019 hearing transcript. Ms. Rice is correct: Petitioners did not argue before the circuit court that Ms. Rice's delay would prejudice them and they did not inform the circuit court that, as a consequence of the 2013 sale of Johnson & Freedman, LLC's files, they do not know where documents relevant to Ms. Rice's claims can be found. So, we will not consider Petitioners' arguments on this issue, now. *State ex rel. State Farm Mut. Auto. Ins. Co.*, 228 W. Va. at 264–65, 719 S.E.2d at 734–35.

Assuming for argument's sake that Petitioners had argued substantial prejudice to the circuit court, we note that we have heard and rejected a similar argument. *See Canady*, 181 W. Va. at 814, 384 S.E.2d at 855 (refusing writ to prohibit reinstatement of action delayed for eight years; delay did not substantially prejudice petitioners' ability to prepare

14

## IV. CONCLUSION

Prohibition is an extraordinary remedy that we issue only in extraordinary cases. Petitioners have not shown that this case is extraordinary. They have not demonstrated that the circuit court's order denying their motion to dismiss Ms. Rice's claims under West Virginia Rule of Civil Procedure 41(b) is clear legal error or a flagrant abuse of the court's discretion.[31] Accordingly, we deny the requested writ.

WRIT DENIED

---

a defense where petitioners had actual knowledge of respondents' claims for the duration of delay).

[31] Because we have concluded that Petitioners have not shown that the circuit court's order is clearly wrong as a matter of law or a flagrant abuse of discretion, we find it unnecessary to analyze Petitioners' arguments regarding the remaining *Hoover* factors.

15